# UNITED STATES DISTRICT COURT

for the

Eastern District of California

**FILED**
**Oct 02, 2026**
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES

v.

CHRISTOPHER BRIAN REILLY

*Defendant(s)*

Case No. 2:26-mj-0147 CSK

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of October 2, 2026 in the county of Stanislaus in the Eastern District of California, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of Firearm |

This criminal complaint is based on these facts:

(see attachment)

☒ Continued on the attached sheet.

/s/
*Complainant's signature*

ATF Task Force Officer Garrett Trevethan
*Printed name and title*

Sworn to me and signed via telephone.

Date: October 2, 2026

*Judge's signature*

City and state: Sacramento, California

Chi Soo Kim, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT OF ATF TASK FORCE OFFICER GARRETT TREVETHAN**

I, Alcohol, Tobacco, Firearms and Explosives (ATF) Task Force Officer Garrett M. Trevethan, being duly sworn, hereby depose and state:

**CRIMINAL COMPLAINT**

1. This Affidavit is submitted in support of an arrest warrant and criminal complaint charging CHRISTOPHER REILLY with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1), on or about September 17, 2026.

2. I am currently employed by the Modesto Police Department and have been since 2021. I am currently assigned as a Detective and Task Force Officer (TFO) with the Alcohol, Tobacco, Firearms and Explosives (ATF) and am dually sworn as a state and federal law enforcement officer.

3. My responsibilities include investigations pertaining to violent offenders and criminal organizations. These investigations frequently involve homicides, assaults, robberies, the possession of firearms and the possession of controlled substances. I am currently assigned to a task force which includes members from various local agencies as well as federal agents. Part of my assignment is to assist local Stanislaus County law enforcement partners with investigations involving violent acts and violent crime.

4. In December of 2014, I was hired by the Stanislaus County Probation Department as a Deputy Probation Officer. During my time as a Deputy Probation Officer, I worked as a Narcotics Detection Canine Handler and Field Training Officer. I was assigned to the Post Release Community Supervision Unit, Adult High-Risk Offender Unit, and Juvenile High-Risk Offender Unit. I primarily supervised individuals who were on probation for narcotics sales and/or felony weapons violations. I received over 500 hours of training pertaining to topics including drug recognition/identification, and general investigations.

5. In August of 2021, I left the Stanislaus County Probation Department on good terms and was hired by the Modesto Police Department as a Police Officer Trainee. I attended the basic "POST" Police Academy between August 2021 and February 2022. The police academy was 20 weeks comprising of approximately 740 hours of training. Between February 2022 to August 2023, I was assigned to the operations division with the Modesto Police Department as a patrol officer. During my time as a patrol officer, I've investigated various crimes to include but not limited to; weapons offenses, narcotics offenses, property related crimes, and assaults.

6. Between August 2023 and July 2024, I was assigned to the Modesto Police Department Street Gang Unit. My primary responsibility was to conduct proactive gang enforcement, gather gang intelligence, investigate and/or assist with gang related crimes to include but not limited to shootings, robberies, firearms offenses and narcotics offenses. I have investigated and arrested no less than two hundred suspects for illegally being in possession of a firearm. I have contacted no less than two hundred gang members. During some of those contacts I have validated multiple gang members on their gang affiliation. These validations have been for a variety of criminal street gangs and subsets.

7. Between August 2024 and August 2026, I was assigned to the Modesto Police Department's Modesto Narcotics Enforcement Team. My primary responsibility was to investigate mid to high level narcotics dealers operating within Stanislaus County.

8. As of this writing, I am a Detective assigned to the Modesto Police Department's Violent Crimes Unit. My primary responsibility is to investigate homicides, attempted homicides, robberies, and felonious assaults.

9. I have received formal specialized training in identifying firearms to include Privately Made Firearms (PMFs) and gang investigations which include firearm related offenses.

10. I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510(7), in that I am an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516.

11. Because this affidavit is submitted for the limited purpose of establishing probable cause for the requested arrest warrant, I have not included each and every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause.

12. This affidavit is based upon my own personal knowledge but also the knowledge of other law enforcement officers involved in this investigation. Where I describe statements made by other people (including other special agents and/or law enforcement officers), the statements are described in sum, substance, and relevant part. Similarly, where I describe information contained in reports and/or other documents or records in this affidavit, that information is also described in sum, substance, and relevant part.

[The affidavit continues on the next page]

## STATEMENT OF PROBABLE CAUSE

### *Initial Traffic Stop*

13. On September 17, 2026, Modesto Police Officers Rahil Sharma and Adrian Garcia were working as a two-man proactive unit in a fully marked police patrol vehicle. Officer Sharma was driving, and Officer Garcia was in the front passenger seat. At approximately 3:50 p.m., the officers observed a Mazda CX-30 SUV, bearing California license plate 8WGP980, run a stop sign at the intersection of Multnomah Avenue and Coffee Road in Modesto, in violation of California Vehicle Code § 22450. The officers also observed an object hanging from the vehicle's rearview mirror, in violation of California Vehicle Code § 26708.

14. The officers followed the vehicle as it pulled into a parking lot at 1424 Coffee Road. At approximately 3:54 p.m., Officer Sharma activated his emergency lighting equipment (red and blue flashing lights) to conduct an enforcement stop. After Officer Sharma activated his emergency lights, the driver, later identified as Christopher REILLY, accelerated through the parking lot at a high rate of speed. Officer Sharma and Garcia continued to follow the vehicle and observed REILLY recklessly driving against oncoming traffic and subsequently through a red light. For public safety and based upon Modesto PD policy in these circumstances, Officers Sharma and Garcia did not pursue the vehicle; instead, they requested additional units to saturate the area in order to locate it.

15. At approximately 3:56 p.m., Modesto Police Department personnel assigned to the Real Time Crime Center were monitoring city-owned cameras and observed the Mazda CX-30, bearing California license plate 8WGP980, traveling westbound on Orangeburg Avenue through the Sunrise Avenue intersection, then turning southbound onto Fiori Avenue. Officers Sharma and Garcia followed the same route, traveling westbound on Orangeburg Avenue through the Sunrise Avenue intersection and turning southbound onto Fiori Avenue. While traveling southbound on Fiori Avenue, the officers located the Mazda CX-30 parked on Dawn Drive, west of Fiori Avenue.

16. The officers observed REILLY standing next to the Mazda CX-30, holding a black vest and looking around frantically. The officers then observed REILLY make eye contact with them and immediately flee on foot, running northbound into an alley.

### *Reilly Taken into Custody*

17. The officers drove into the alley and located REILLY hiding between two fence lines, holding the vest. Officer Garcia ordered REILLY to show his hands. Instead, REILLY reached toward the vest. Officer Garcia shoved REILLY into the fence, causing both REILLY and Officer Garcia to fall through the fence and onto

the ground. REILLY dropped the vest during the fall, and Officer Garcia took him into custody. For reference, see below still shot photographs of Officer Sharma's body worn camera.




18. Upon exiting the vehicle, Officer Garcia was immediately face to face with REILLY and did not have time to activate his camera before the encounter began. After REILLY was placed in handcuffs, Officer Garcia activated his body-worn camera. Officer Garcia then picked up the black leather vest, which contained the firearm charged in this complaint. Officer Garcia picked up the vest and felt what he recognized, based on his training and experience, to be a firearm. A search of the vest revealed a Hi-Point 9mm pistol bearing serial number P10120211. Officer Sharma rendered the firearm safe and found that the magazine, which was inserted in the firearm, was loaded with three live 9mm rounds. There was no round in the chamber.


Modesto Police Department - CA
MP26022043
A.GARCIA (13268)
2026-09-17 16:01:47 -0700
AXON BODY 4 D01A24679
Ofc. Garcia picking up the black leather vest


Modesto Police Department - CA
MP26022043
A.GARCIA
2026-09-17 16:02:14 -0700
AXON BODY 4 D01A24679
Pocket in black leather vest where firearm is located


Modesto Police Department - CA
MP26022043
A.GARCIA (13268)
2026-09-17 16:02:29 -0700
AXON BODY 4 D01A24679
Ofc. Sharma removing firearm from the black leather vest

***Photographs of Firearm, Magazine, and Ammunition***

19. The photographs below depict the firearm, the magazine that was inserted in the firearm, and the ammunition seized from the vest.







P10120211
Viewed by trevethang (modestopd.evidence.com) on 1 October, 2026 UTC


SIRCHIE
INCHES
CENTIMETERS
Viewed by trevethang (modestopd.evidence.com) on 1 October, 2026 UTC


Viewed by trevethang (modestopd.evidence.com) on 1 October, 2026 UTC

20. Officers conducted a records check of REILLY which revealed prior felony convictions, prohibiting him from owning or possessing firearms and ammunition. Officers arrested REILLY for numerous firearm-related charges and evading. REILLY was booked into the Stanislaus County Public Safety Center.

***Reilly has multiple prior felony convictions and is therefore prohibited from possessing firearms and or ammunition***

21. A 2004 felony conviction in Alameda County for California Vehicle Code § 10851(a), Vehicle theft.

22. A 2008 felony conviction in Santa Clara County for California Vehicle Code § 10851(a), Vehicle theft.

23. A 2013 felony conviction in Los Angeles County for California Penal Code § 29800(a)(1), Felon in possession of a firearm.

24. A 2016 felony conviction in Alameda County for California Vehicle Code § 2800.2(a), Evading a peace officer.

25. A 2022 felony conviction in Santa Clara County for California Penal Code § 496D(a), Possession of a stolen vehicle.

***Preliminary Interstate Nexus Determination***

26. On September 30, 2026, I consulted ATF Special Agent Payton Smith regarding the manufacturing origin of the firearm described in this affidavit as a Hi-Point Firearms, Model C9, 9mm luger pistol, bearing serial number P10120211, and ammunition described in this affidavit that bears the headstamp "FC 9MM LUGER." Special Agent Smith has completed the ATF Firearm Interstate Nexus Training Program and has on numerous occasions been accepted in State and Federal Court as an Expert Witness on the manufacturing origin and markings of firearms and ammunition. Additionally, Special Agent Smith has completed verbal and written interstate nexus determinations on hundreds of firearms. It is Special Agent Smith's opinion that the firearm and ammunition described in this affidavit was manufactured outside the State of California.

## CONCLUSION

27. Based on the above information, there is probable cause that **CHRISTOPHER REILLY** unlawfully possessed a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1), on or about September 17, 2026. Based on this probable, I respectfully request that this Court authorize this Criminal Complaint and issue an arrest warrant for Christopher Reilly.

I swear, under the penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information, and belief.

/s/
Task Force Officer Garrett Trevethan, ATF

Sworn and subscribed to me telephonically,
on October 2, 2026

Chi Soo Kim
HONORABLE CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

Approved as to form:

/s/ GEORGE BIKO
GEORGE BIKO
Special Assistant United States Attorney

**United States v. Christopher Brian Reilly**
**Penalties for Criminal Complaint**

VIOLATION: 18 U.S.C. § 922(g)(1) – Felon in Possession of Firearm

PENALTIES: Maximum of up to 15 years in prison; or
Fine of up to $250,000; or both fine and imprisonment
Supervised release of up to 3 years

SPECIAL ASSESSMENT: $100 (mandatory)